IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE JOAN JOHNSON, | ) | |
| | ) | |
| Debtor | ) | Petition #: 22-08837 |
| | ) | Judge David D. Cleary |
| | ) | Chapter 13 |
| ------------------------------- | | |
| JOAN JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| S.A.I.L. LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT IN ADVERSARY PROCEEDING – DEBTOR'S
OBJECTION AND COUNTERCLAIM
TO PROOF OF CLAIM #18 FILED BY S.A.I.L. LLC.**

1.      Debtor, Joan Johnson ("Ms. Johnson"), files this objection and counterclaim to

Proof of Claim #18, filed by S.A.I.L. LLC ("SAIL"). As set forth below, the Proof of Claim is

based on a transaction that violates the Illinois Predatory Loan Prevention Act, 815 ILCS 15-1-1 et

seq., and the Illinois Interest Act, 815 ILCS 205/4 and /6.

**PARTIES**

2.      SAIL is a limited liability company organized under Delaware law with its principal

office at 2400 E. Devon Ave., Ste. 300, Des Plaines, IL 60018.   Its registered agent and office is C

T Corporation System, 208 S. La Salle St., Suite 814, Chicago, IL 60604.  It has four managers:

Greg Labuschagne; Willem Van Aardt; Steven Schoenberg; and Dustin Mauldin.  It does business as

SAILLOANS.COM.  It was admitted in Illinois on April 8, 2021.

## FACTS

3.      SAIL occupies the same premises as Americash Loans, L.L.C. ("Americash"), also a Delaware limited liability company with its principal office at 2400 E. Devon Ave., Ste. 300, Des Plaines, IL 60018.   Americash Loans, L.L.C. has the same four managers as SAIL.

4.      Americash had made high-interest loans to Illinois residents from storefront locations and over the Internet.

5.      Effective March 23, 2021, Illinois enacted the Predatory Loan Prevention Act, 815 ILCS § 15-1-1, which limited interest rates to 36%.

6.      In response to the Predatory Loan Prevention Act, the managers of Americash devised a new method of making high-interest loans in disguise.

7.      The former Americash storefront locations became SAIL locations.

8.      Former customers of Americash were contacted to generate business for SAIL.

9.      Prior to March 23, 2021, Americash would, for example, make a loan of $1,000 at 400% interest (Appendix A).

10.      The new method of doing business adopted by SAIL, exemplified by the loan made to Ms. Johnson (Appendix B),  was as follows:

      a.      SAIL would disburse $1,000 to the borrower;

      b.      SAIL would document a loan with an amount financed of $4,000;

      c.      SAIL would compute interest on the entire $4,000 at just under the new maximum rate of 36%;

      d.      The $3,000 difference between the amount financed of $4,000 and the $1,000 disbursed to the borrower would be retained by SAIL as a "Collateral Deposit deposited on your behalf with Lender's Bank" until "your loan is closed and paid to a $0 balance."

      e.      The borrower has no access to the $3,000 "Collateral Deposit" before the loan is paid in full.

       f.      By that time, the borrower would have "repaid" the $3,000 through his or her monthly payments, i.e., SAIL was "lending" the borrower money that the borrower had paid SAIL.

11.     The rate of interest computed on the $1,000 that the borrower actually has the benefit of is greatly in excess of the 36% maximum permitted.

12.     The "lending" of $3,000 which the borrower does not receive before it is "repaid" is a sham, contrived to permit the making of loans at a rate greatly exceeding the maximum permitted.

13.     SAIL's documents distort terminology and concepts which have legitimate purposes.  For example, in a true "collateral deposit," a consumer who already has $3,000 but poor credit may obtain a secured credit card or line of credit, allowing her to obtain credit up to $3,000 as needed.  In that case, the consumer already has the $3,000.  Here, the consumer is forced to "borrow" the $3,000 from SAIL in order to get $1,000.

14.     The loans are presented in a deceptive manner. SAIL's website states:

      a.     APPLY  Complete our quick and easy online application with the flexibility to request funds up to $4,000.

      b.     GET CASH  Receive a portion of your loan deposited directly into your checking account as soon as today when you complete your application before 11:30a CST.

      c.     BUILD YOUR SAVINGS  While you pay back your loan, you'll accrue interest and grow your savings. At the end of the loan, you'll receive full access to your funds.

(https://sailloans.com/savings-and-installment-loans/) (Appendix C)

15.     The same website also states: "A savings and installment loan is a loan that is paid back through a series of payments. While making payments, savings have been created and will build with interest. This will remain secure until you finish your payments, then that money will be transferred to you." (https://sailloans.com/faq/)  (Appendix D)

16. The same website also states: "The maximum loan amount available to Illinois customers is $4,000." (https://sailloans.com/states/illinois/) (Appendix E)

17. The same website also gives this example: "Loan amount of $1,000.00; loan term (months) of 12; APR of 35.99% Your bi-weekly repayment will be $46.06. The total of payments will be $1,197.55 with a cost of $197.55." (https://sailloans.com/states/illinois/) (Appendix E) This example implies that the "loan amount" and the amount received are the same.

18. It is not apparent from the website that the consumer must borrow $4,000 to receive $1,000.

19. Ms. Johnson was in immediate need of $4,000. She looked on the Internet for a company that would loan her that sum and found SAIL.

20. Ms. Johnson read the material on the SAIL website, and thought she would borrow $4,000 and receive $4,000. She did not realize that she would only receive $1,000 until actually receiving that amount. Had she known she would only receive $1,000, she would not have obtained the loan.

21. The contracting procedure used with respect to Ms. Johnson was a standard practice, carried out using form documents.

22. SAIL's arrangement is very similar to that found to be a sham in *Williams v. Chartwell Fin. Servs.*, 204 F.3d 748 (7th Cir. 2000).

## COUNT I – PREDATORY LOAN PREVENTION ACT AND ILLINOIS CONSUMER FRAUD ACT

23. Ms. Johnson incorporates paragraphs 1-22.

24. The Predatory Loan Prevention Act states its purpose as follows:

Purpose and construction.

Illinois families pay over $500,000,000 per year in consumer installment, payday, and title loan fees. As reported by the Department in 2020, nearly half of Illinois payday loan borrowers earn less than $30,000 per year, and the average annual percentage rate of a payday loan is 297%. The purpose of this Act is to protect consumers from predatory loans consistent with federal law and the Military Lending Act which protects active duty members of the military. This Act shall be construed as a consumer protection law for all purposes.

4

This Act shall be liberally construed to effectuate its purpose.   (815 ILCS 123/15-1-5 )

25.     The Predatory Loan Prevention Act imposes a 36% rate cap:

Rate cap.

Notwithstanding any other provision of law, for loans made or renewed on and after the effective date of this Act, a lender shall not contract for or receive charges exceeding a 36% annual percentage rate *on the unpaid balance of the amount financed* for a loan. For purposes of this Section, the annual percentage rate shall be calculated as such rate is calculated using the system for calculating a military annual percentage rate under Section 232.4 of Title 32 of the Code of Federal Regulations as in effect on the effective date of this Act. Nothing in this Act shall be construed to permit a person or entity to contract for or receive a charge exceeding that permitted by the Interest Act or other law.  (815 ILCS 123/15-5-5, emphasis added)

26.     815 ILCS 123/15-5-15 provides:

No evasion.

(a) *No person or entity may engage in any device, subterfuge, or pretense to evade the requirements of this Act, including, but not limited to,* making loans disguised as a personal property sale and leaseback transaction; disguising loan proceeds as a cash rebate for the pretextual installment sale of goods or services; or making, offering, assisting, or arranging a debtor to obtain a loan with a greater rate or interest, consideration, or charge than is permitted by this Act through any method including mail, telephone, internet, or any electronic means regardless of whether the person or entity has a physical location in the State.

(b) If a loan exceeds the rate permitted by Section 15-5-5 [815 ILCS 123/15-5-5], a person or entity is a lender subject to the requirements of this Act notwithstanding the fact that the person or entity purports to act as an agent, service provider, or in another capacity for another entity that is exempt from this Act, if, among other things:

> (1) the person or entity holds, acquires, or maintains, directly or indirectly, the predominant economic interest in the loan; or
>
> (2) the person or entity markets, brokers, arranges, or facilitates the loan and holds the right, requirement, or first right of refusal to purchase loans, receivables, or interests in the loans; or
>
> (3) the totality of the circumstances indicate that the person or entity is the lender and the transaction is structured to evade the requirements of this Act. Circumstances that weigh in favor of a person or entity being a lender include, without limitation, where the person or entity:
>
> > (i) indemnifies, insures, or protects an exempt person or entity for any costs or risks related to the loan;
> >
> > (ii) predominantly designs, controls, or operates the loan program; or

(iii) purports to act as an agent, service provider, or in another capacity for an exempt entity while acting directly as a lender in other states.

27. 815 ILCS 123/15-5-10 provides that "Any loan made in violation of this Act is null and void and no person or entity shall have any right to collect, attempt to collect, receive, or retain any principal, fee, interest, or charges related to the loan."

28. 815 ILCS 123/15-10-5 provides that "(b) Any violation of this Act, including the commission of an act prohibited under Article 5, constitutes a violation of the Consumer Fraud and Deceptive Business Practices Act [815 ILCS 505/1 et seq.]."

29. 815 ILCS 123/15-10-25 provides that "There shall be no waiver of any provision of this Act."

30. The "lending" of $3,000 which the borrower does not have or receive before it is "repaid" is a "device, subterfuge, or pretense to evade the requirements of this Act" prohibited by 815 ILCS 123/15-5-15.

WHEREFORE, Ms. Johnson requests the following relief against SAIL:

a. Voiding of its proof of claim and the underlying loan;

b. A refund of all sums paid on the loan;

c. Punitive damages;

d. Attorney's fees, litigation expenses and costs of suit;

e. Such other or further relief as is proper.

## COUNT II – INTEREST ACT

31. Ms. Johnson incorporates paragraphs 1-22.

32. Section 4 of the Illinois Interest Act, 815 ILCS 205/4, provides:

(1) Except as otherwise provided in Section 4.05 [815 ILCS 205/4.05], in all written contracts it shall be lawful for the parties to stipulate or agree that an annual percentage rate of 9%, or any less sum, shall be taken and paid upon every $100 of money loaned or in any manner due and owing from any person to any other person or corporation in this state, and after that rate for a greater or less sum, or for a longer or shorter time, except as herein provided.

The maximum rate of interest that may lawfully be contracted for is determined by the law

applicable thereto at the time the contract is made. Any provision in any contract, whether made before or after July 1, 1969, which provides for or purports to authorize, contingent upon a change in the Illinois law after the contract is made, any rate of interest greater than the maximum lawful rate at the time the contract is made, is void.

It is lawful for a state bank or a branch of an out-of-state bank, as those terms are defined in Section 2 of the Illinois Banking Act [205 ILCS 5/2], to receive or to contract to receive and collect interest and charges at any rate or rates agreed upon by the bank or branch and the borrower. It is lawful for a savings bank chartered under the Savings Bank Act [205 ILCS 205/1001 et seq.] or a savings association chartered under the Illinois Savings and Loan Act of 1985 [205 ILCS 105/1-1 et seq.] to receive or contract to receive and collect interest and charges at any rate agreed upon by the savings bank or savings association and the borrower.

It is lawful to receive or to contract to receive and collect interest and charges as authorized by this Act and as authorized by the Consumer Installment Loan Act [205 ILCS 670/1 et seq.], the Payday Loan Reform Act [815 ILCS 122/1-1 et seq.], the Retail Installment Sales Act [815 ILCS 405/1 et seq.], the Illinois Financial Services Development Act [205 ILCS 675/1 et seq.], the Motor Vehicle Retail Installment Sales Act [815 ILCS 375/1 et seq.], or the Consumer Legal Funding Act [815 ILCS 121/1 et seq.]. It is lawful to charge, contract for, and receive any rate or amount of interest or compensation, except as otherwise provided in the Predatory Loan Prevention Act, with respect to the following transactions:
. . .

    (a) Any loan made to a corporation;

    (b) Advances of money, repayable on demand, to an amount not less than $5,000, which are made upon warehouse receipts, bills of lading, certificates of stock, certificates of deposit, bills of exchange, bonds or other negotiable instruments pledged as collateral security for such repayment, if evidenced by a writing;

    (c) Any credit transaction between a merchandise wholesaler and retailer; any business loan to a business association or copartnership or to a person owning and operating a business as sole proprietor or to any persons owning and operating a business as joint venturers, joint tenants or tenants in common, or to any limited partnership, or to any trustee owning and operating a business or whose beneficiaries own and operate a business, except that any loan which is secured (1) by an assignment of an individual obligor's salary, wages, commissions or other compensation for services, or (2) by his household furniture or other goods used for his personal, family or household purposes shall be deemed not to be a loan within the meaning of this subsection; and provided further that a loan which otherwise qualifies as a business loan within the meaning of this subsection shall not be deemed as not so qualifying because of the inclusion, with other security consisting of business assets of any such obligor, of real estate occupied by an individual obligor solely as his residence. The term "business" shall be deemed to mean a commercial, agricultural or industrial enterprise which is carried on for the purpose of investment or profit, but shall not be deemed to mean the ownership or maintenance of real estate occupied by an individual obligor solely as his residence;

    (d) Any loan made in accordance with the provisions of Subchapter I of Chapter 13 of Title 12 of the United States Code, which is designated as "Housing Renovation and Modernization";

(e) Any mortgage loan insured or upon which a commitment to insure has been issued under the provisions of the National Housing Act, Chapter 13 of Title 12 of the United States Code;

(f) Any mortgage loan guaranteed or upon which a commitment to guaranty has been issued under the provisions of the Veterans' Benefits Act, Subchapter II of Chapter 37 of Title 38 of the United States Code;

(g) Interest charged by a broker or dealer registered under the Securities Exchange Act of 1934 [15 U.S.C. § 78a et seq.], as amended, or registered under the Illinois Securities Law of 1953, approved July 13, 1953, as now or hereafter amended [815 ILCS 5/1 et seq.], on a debit balance in an account for a customer if such debit balance is payable at will without penalty and is secured by securities as defined in Uniform Commercial Code-Investment Securities;

(h) Any loan made by a participating bank as part of any loan guarantee program which provides for loans and for the refinancing of such loans to medical students, interns and residents and which are guaranteed by the American Medical Association Education and Research Foundation;

(i) Any loan made, guaranteed, or insured in accordance with the provisions of the Housing Act of 1949, Subchapter III of Chapter 8A of Title 42 of the United States Code and the Consolidated Farm and Rural Development Act, Subchapters I, II, and III of Chapter 50 of Title 7 of the United States Code;

(j) Any loan by an employee pension benefit plan, as defined in Section 3 (2) of the Employee Retirement Income Security Act of 1974 (29 U.S.C.A. Sec. 1002), to an individual participating in such plan, provided that such loan satisfies the prohibited transaction exemption requirements of Section 408 (b) (1) (29 U.S.C.A. Sec. 1108 (b) (1)) or Section 2003 (a) (26 U.S.C.A. Sec. 4975 (d) (1)) of the Employee Retirement Income Security Act of 1974;

(k) Written contracts, agreements or bonds for deed providing for installment purchase of real estate, including a manufactured home as defined in subdivision (53) of Section 9-102 of the Uniform Commercial Code [810 ILCS 5/9-102] that is real property as defined in the Conveyance and Encumbrance of Manufactured Homes as Real Property and Severance Act [765 ILCS 170/5-1 et seq.];

(l) Loans secured by a mortgage on real estate, including a manufactured home as defined in subdivision (53) of Section 9-102 of the Uniform Commercial Code that is real property as defined in the Conveyance and Encumbrance of Manufactured Homes as Real Property and Severance Act [765 ILCS 170/5-1 et seq.];

(m) Loans made by a sole proprietorship, partnership, or corporation to an employee or to a person who has been offered employment by such sole proprietorship, partnership, or corporation made for the sole purpose of transferring an employee or person who has been offered employment to another office maintained and operated by the same sole proprietorship, partnership, or corporation;

(n) Loans to or for the benefit of students made by an institution of higher education. . . .

8

33.   Because SAIL charged unlawful interest, it is liable for statutory damages under

815 ILCS 205/6, which provides:

> If any person or corporation knowingly contracts for or receives, directly or indirectly, by
> any device, subterfuge or other means, unlawful interest, discount or charges for or in
> connection with any loan of money, the obligor may, recover by means of an action or
> defense an amount equal to twice the total of all interest, discount and charges determined
> by the loan contract or paid by the obligor, whichever is greater, plus such reasonable
> attorney's fees and court costs as may be assessed by a court against the lender. The
> payments due and to become due including all interest, discount and charges included
> therein under the terms of the loan contract, shall be reduced by the amount which the
> obligor is thus entitled to recover. Recovery by means of a defense may be had at any time
> after the loan is transacted. Recovery by means of an action may be had at any time after the
> loan is transacted and prior to the expiration of 2 years after the earlier of (1) the date of the
> last scheduled payment of the loan after giving effect to all renewals or extensions thereof, if
> any, or (2) the date on which the total amount due under the terms of the loan contract is
> fully paid. A bona fide error in connection with a loan shall not be a violation under this
> section if the lender corrects the error within a reasonable time.

> No person shall be liable under this Act for any act done or omitted in good faith in
> conformity with any rule, regulation, interpretation, or opinion issued by the Commissioner
> of Banks and Real Estate or the Department of Financial Institutions or any other
> department or agency of the State, notwithstanding that after such act or omission has
> occurred, such rule, regulation, interpretation, or opinion is amended, rescinded, or
> determined by judicial or other authority to be invalid for any reason.

WHEREFORE, Ms. Johnson requests the following relief against SAIL:

a.   Damages as provided in 815 ILCS 205/6;

b.   Attorney's fees, litigation expenses and costs of suit;

c.   Such other or further relief as is proper.

## COUNT III – ILLINOIS CONSUMER FRAUD ACT

34.   Ms. Johnson incorporates paragraphs 1-22.

35.   In addition to the violation of the Predatory Loan Prevention Act, SAIL violated the

Consumer Fraud Act, 815 ILCS 505/2, by making deceptive and misleading representations

concerning the nature of the transaction Ms. Johnson was obtaining.

36.   815 ILCS 505/2 provides:

> Sec. 2. Unfair methods of competition and unfair or deceptive acts or practices, including
> but not limited to the use or employment of any deception fraud, false pretense, false
> promise, misrepresentation or the concealment, suppression or omission of any material
> fact, with intent that others rely upon the concealment, suppression or omission of such

material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5 (a) of the Federal Trade Commission Act.

37.    SAIL engaged in such conduct in the course of trade and commerce.

38.    SAIL engaged in such conduct for the purpose of inducing Ms. Johnson to enter into a loan transaction.

39.    Ms. Johnson entered into a loan transaction believing that she was borrowing $4,000 and would receive $4,000 immediately.

WHEREFORE, Ms. Johnson requests the following relief against SAIL:

a.    Voiding of its proof of claim and the underlying loan;

b.    A refund of all sums paid on the loan;

c.    Punitive damages;

d.    Attorney's fees, litigation expenses and costs of suit;

e.    Such other or further relief as is proper.

/s/ Christine Thurston
Christine Thurston

Christine Thurston
**THURSTON LAW FIRM**
PO Box 4018
Itasca, IL 60143
(312) 818-8008
(312) 858-1600 (FAX)
Email: cthurston@thurstonlawfirm.com

/s/ Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman (ARDC 0712094)
Tara L. Goodwin (ARDC 6297473)

Matthew J. Goldstein (ARDC 6339033)
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

T:\39094\Pleading\Complaint_Pleading.WPD