**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | ) |
| | ) Case No. 22 B 8837 |
| JOAN JOHNSON, | ) |
| | ) |
| Debtor. | ) Chapter 13 |
| | ) |
| ————————————— | ) |
| | ) |
| JOAN JOHNSON, | ) |
| | ) Adv. No. 22 A 172 |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| S.A.I.L. LLC, | ) Judge David D. Cleary |
| | ) |
| Defendant. | ) |

**OPINION**

This matter comes before the court on the motion of Defendant S.A.I.L. LLC

("Defendant" or "SAIL") to compel arbitration ("Motion to Compel") of the claims for relief in

the complaint ("Complaint") filed against it by Plaintiff Joan Johnson ("Plaintiff," "Debtor" or

"Johnson").  The parties appeared in court for status on the Complaint, and the court entered a

briefing schedule on the Motion to Compel.  Plaintiff timely responded to the Motion to Compel

("Response") and Defendant timely replied ("Reply").  Having reviewed the papers filed and

considered the arguments of the parties, the court will enter an order granting in part and denying

in part the Motion to Compel.

**I.      INTRODUCTION**

One of the "chief purpose[s] of the bankruptcy laws is to secure a prompt and effectual

administration and settlement of the estate … within a limited period, and that provision for

summary disposition, without regard to usual modes of trial attended by some necessary delay, is

one of the means chosen by Congress to effectuate that purpose[.]" *Katchen v. Landy*, 382 U.S. 323, 328-29 (1966) (quotations omitted).   A bankruptcy court's jurisdiction is *in rem* jurisdiction, overseeing resolution of claims against and by the estate. *See Cent. Virginia Cmty. Coll. v. Katz*, 546 U.S. 356, 369 (2006) ("Bankruptcy jurisdiction, as understood today and at the time of the framing, is principally *in rem* jurisdiction."). While a bankruptcy court's jurisdiction is not limitless, Congress intended that it would be able to "deal efficiently and expeditiously with all matters connected with the bankruptcy estate[.]" *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995) (quotation omitted).

In this case, Debtor determined that she needed a structured repayment of her claims and discharge of her debts. She filed for relief under chapter 13 of the Bankruptcy Code and proposed a plan to do just that. As the Code provides, SAIL filed a proof of claim ("Claim") that would entitle it to share, with other creditors, in the distributions made under a confirmed chapter 13 plan. In the process of addressing the filed proofs of claim, and moving toward confirmation of her plan, the Debtor objected to SAIL's Claim. According to the chapter 13 Trustee ("Trustee") and Debtor, that claim objection must be resolved before Debtor's plan can be confirmed. Confirmation, of course, will benefit all parties, and successful completion of the confirmed plan will end with creditors being paid in full and with Debtor receiving her discharge.

SAIL, however, has asked that the court pause the claims objection process and send this dispute between itself and Debtor to arbitration, as agreed to by SAIL and Debtor in their prepetition contract. There is no disagreement that efficient, fair and prompt resolution of disputes is a goal of **both** bankruptcy (with multiple parties-in-interest in statutory disputes over estate assets), *see Katchen*, 382 U.S. at 328-29, and arbitration (with parties bound by contractual

2

agreements), *see Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985) (when agreeing to arbitrate, a party "trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration").

The Supreme Court has guided lower courts to aid their determination of whether to enforce an agreement to arbitrate or to except such an agreement in favor of litigation.  *See Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220, 227 (1987) [hereinafter, *McMahon*] ("To defeat application of the Arbitration Act in this case, therefore, the McMahons must demonstrate that Congress intended to make an exception to the Arbitration Act … an intention discernible from the text, history, or purposes of the statute.").  Generally, in commercial disputes, an arbitration agreement between parties must be enforced.  The Federal Arbitration Act ("FAA") requires it.  *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("[I]nsofar as the language of the [Federal Arbitration] Act guides our disposition of this case, we would conclude that agreements to arbitrate must be enforced, absent a ground for revocation of the contractual agreement.").  However, there is no national policy favoring arbitration.  *See Gotham Holdings, LP v. Health Grades, Inc.*, 580 F.3d 664, 666 (7th Cir. 2009) ("The Federal Arbitration Act eliminates hostility to private dispute resolution; it does not create a preference for that process.").  "The federal policy is about treating arbitration contracts like all others, not about fostering arbitration." *Morgan v. Sundance, Inc.*, ___ U.S. ___, 142 S. Ct. 1708, 1713 (2022).

When an arbitration demand is made in a bankruptcy case, however, a conflict exists as to whether a bankruptcy court should enforce the bilateral arbitration agreement, or its *in rem* jurisdiction over the claims under the Bankruptcy Code.  The court must address the two

3

statutory schemes – the FAA and the Bankruptcy Code – and the potential conflict between them.  Neither the Supreme Court nor the Seventh Circuit have addressed this narrow issue.

## II.     JURISDICTION

The court has jurisdiction over this adversary proceeding under the district court's Internal Operating Procedure 15(a) and 28 U.S.C. § 1334(b), subject to the determination of whether the Clause (defined in section III(B)) removes any of the counts of the Complaint to an arbitral forum.  The Motion to Compel is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (B), (C) and (O). Venue is proper under 28 U.S.C. § 1409(a).

## III.     BACKGROUND

### A.  Commencement of the Bankruptcy Case

Joan Johnson filed for relief under chapter 13 on August 5, 2022.  As many chapter 13 debtors do, she made a small down payment ($350) on the flat fee ($4,500) charged by her attorneys.  Debtors often file under chapter 13 because they wish to retain a home or a car, and Johnson is no different; she listed a 2017 Hyundai Santa Fe on Schedule B.

With her petition, Johnson filed a plan ("Plan").  In the Plan, Johnson proposed monthly payments of $1,130 for 60 months.  Under the Plan she would pay the claims against her in full over the proposed term; these include attorneys' fees, priority claims filed by taxing bodies, and unsecured claims.   Johnson included a non-standard provision in her plan which would step up monthly payments to the creditor secured by a lien on her car ("Global Lending").

Johnson listed one secured claim in the amount of $16,425 on Schedule D and a priority claim of $2,500 on Schedule E.  She listed 31 unsecured claims on Schedule F, including a debt owed to SAIL in the amount of $750.  The Bankruptcy Noticing Center sent notice to Johnson's creditors of the date for the meeting of creditors under 11 U.S.C. § 341 as well as of the deadline

for filing proofs of claim against Johnson's estate.  The bar date for both non-government and government claims has passed.  Eighteen creditors filed proofs of claim, including SAIL.

Global Lending filed an objection to confirmation, which Johnson resolved with an amended plan ("Amended Plan").  The Amended Plan provided for preconfirmation payments to Global Lending in the amount of $100 and postconfirmation payments of $335.

## B.  The Relationship With SAIL and Its Claim Against the Estate

According to the allegations in the Complaint, SAIL is a limited liability company with its principal office in Des Plaines, Illinois.  It occupies the same premises and has the same managers as Americash Loans, L.L.C. ("Americash") did.  Prior to March 23, 2021, Americash made high-interest loans to Illinois residents from storefront locations and over the Internet.

Effective March 23, 2021, Illinois enacted the Predatory Loan Prevention Act, 815 ILCS 123/15-1-1 et seq. ("PLPA").  The PLPA limited interest rates to 36%.  Johnson alleges in the Complaint that "the managers of Americash devised a new method of making high-interest loans in disguise" in response to the PLPA.  Complaint, ¶ 6.

In the spring of 2022, Johnson needed $4,000.  She found SAIL on the Internet, read the material on its website, and borrowed money from it.  According to the Consumer Loan Agreement, Security Agreement, and Truth-in-Lending Act Disclosure that SAIL attached to its Claim ("Agreement"), SAIL financed $4,000 for Johnson, which was distributed as follows:

$1,000 – given directly to Johnson

$3,000 – deposited on Johnson's behalf with SAIL's bank

The terms of the loan from SAIL to Johnson include a Jury Trial Waiver and Arbitration Clause ("Clause").  The Clause governs "any and all claims, controversies and/or disputes

5

arising from or related in any way" to the Agreement and provides "that all Disputes shall be resolved by binding arbitration pursuant to and under the Federal Arbitration Act[.]"

Johnson had included SAIL in her original schedules as an unsecured creditor. She had not listed SAIL on Schedule D with a secured claim. SAIL filed the Claim, however, alleging that Johnson owes it $3,741.28, and that it is secured in the amount of $3,000 by a "Collateral Deposit."

### C. The Amended Plans and Johnson's Objection to SAIL's Claim

#### 1. Amended plans

Johnson's Amended Plan treated SAIL's secured claim in section 3.5 by proposing to surrender the "SAIL secured bank account." She amended her schedules to include a "SAIL bank account" in the amount of $3,000 on Schedule B, and to move her debt to SAIL from Schedule F to Schedule D.

Johnson then filed her second amended plan ("Second Amended Plan"), which removed SAIL from section 3.5. Instead of proposing to surrender the SAIL bank account, Johnson added the following nonstandard provision to section 8.1: "Proof of Claim No. 18 filed by S.A.I.L. LLC on 10/12/22 shall be paid by the trustee in accordance with the final judgment of adversary case no. 22-00172. No payments shall be made on that claim until the adversary is resolved."

#### 2. Objection to SAIL's claim

About a week after filing the Amended Plan, Johnson filed the Complaint and commenced this adversary proceeding. In the Complaint, she objected to SAIL's Claim and brought a counterclaim against it.[1]

---

[1] Fed. R. Bankr. P. 3007(b) states: "A party in interest shall not include a demand for relief of a kind specified in Rule 7001 in an objection to the allowance of a claim, but may include the objection in an adversary proceeding."

6

- The first claim for relief objects to SAIL's Claim and alleges that the underlying loan is voidable under the PLPA in violation of both the PLPA and the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act").  Plaintiff alleges that the $3,000 which SAIL deposited on her behalf with its bank is a "device, subterfuge, or pretense to evade the requirements" of the PLPA.  It also violates the Consumer Fraud Act, because any violation of the PLPA constitutes a violation of the Consumer Fraud Act.  Johnson therefore asks that the court void SAIL's Claim and the underlying loan, refund all sums paid on the loan, impose punitive damages and award attorney's fees and costs of litigation.

- The second claim for relief is brought under the Illinois Interest Act.  Plaintiff alleges that SAIL charged her unlawful interest and is therefore liable for statutory damages pursuant to the Interest Act, as well as attorney's fees and costs of litigation.

- Plaintiff's third claim seeks relief under the Consumer Fraud Act.  She alleges that SAIL made deceptive and misleading representations concerning the nature of the transaction for the purpose of inducing her to enter into that transaction.  As in Count I, Johnson asks that the court void SAIL's Claim and the underlying loan, refund all sums paid on the loan, impose punitive damages and award attorney's fees and costs of litigation.

### 3.  Motion to compel arbitration

SAIL did not file an answer to the Complaint, or a motion to dismiss.  Instead, it promptly filed this Motion to Compel.

In order to address the validity of SAIL's Claim, Debtor filed the adversary proceeding, seeking relief in a judicial forum.  By filing the Motion to Compel, SAIL has asked the court to

enforce the arbitration agreement set forth in its loan documents so that the parties resolve the

claim objection and counterclaim through arbitration.

If Johnson can confirm the Second Amended Plan and complete the payments it requires,

she is eligible for a discharge of her debts. As the court noted in the Introduction, however, the

Trustee and the Debtor have continued the confirmation hearing and contend that Debtor's

objection to SAIL's Claim must be resolved before the Second Amended Plan can be confirmed.

The Trustee filed a motion to dismiss Johnson's case for unreasonable delay in September 2022,

about a month before Johnson filed this adversary proceeding. The Trustee's motion to dismiss

and confirmation of Johnson's Second Amended Plan have been put on hold until SAIL's

Motion to Compel is resolved. Since disbursements to creditors will not begin until a plan is

confirmed, creditors are waiting for payment on their claims while this dispute is pending.

## IV. CONTENTIONS OF THE PARTIES

In the Motion to Compel, SAIL argues that arbitration agreements must be rigorously

enforced, and that the Supreme Court has instructed lower courts to implement those agreements

so long as they are enforceable. To determine whether to send this dispute to an arbitral forum,

SAIL argues, this court must consider if the parties agreed to arbitrate, if the dispute falls within

the arbitration clause, and if any nonarbitrable claims should be stayed pending the conclusion of

arbitration. For these propositions, SAIL cites *Pereira v. Urthbox, Inc.* (*In re Try The World,
Inc.*), No. 18-11764-JLG, 2021 WL 3502607, at *7 (Bankr. S.D.N.Y. Aug. 9, 2021).

SAIL argues that Debtor agreed to arbitrate all disputes. SAIL also asserts that Debtor's

claims are not core, although it offers that a bankruptcy court may exercise discretion to decline

to enforce a valid arbitration agreement if a dispute is core. Since Johnson's claims fall within

the scope of the Clause and, in SAIL's opinion are non-core, this court has no discretion to deny

8

the Motion to Compel.  Alternatively, if any claims are core, SAIL asks the court to order arbitration for any non-core claims.

In her Response, Debtor does not dispute that she signed a contract with SAIL that contains an arbitration clause which covers all "disputes."  But, she contends that arbitration is not to be preferred, only to be enforced on the same footing as other contracts.  She distinguishes *Argon Credit*, the only case SAIL cites in support for its contention that her claims are non-core, and argues that her objection and counterclaim are core.  *In re Argon Credit, LLC*, No. 16-39654, 2018 WL 4562542, at *1 (Bankr. N.D. Ill. Sept. 21, 2018).

Johnson further asserts that resolution of her objection and counterclaim is material to her reorganization.  "If SAIL's loan is invalid, other creditors … will be paid more quickly."  Response, p. 9.  All of her claims are intertwined, because all turn on a finding that SAIL used a device or artifice to evade the PLPA.  She directs the court to *Citibank, N.A. v. Park-Kenilworth Industries, Inc.*, 109 B.R. 321 (N.D. Ill. 1989), as an example of a district court treating the entire controversy as a core proceeding.  If this court allows any of her claims to be resolved outside the bankruptcy case, Johnson contends that this would substantially interfere with her efforts to reorganize, and also would be inconsistent with the purposes of the Bankruptcy Code.

In its Reply, SAIL reiterates its contention that Johnson's claims are not core.  It criticizes Johnson's case citations in support of her argument that her claims are core, asserting that none of those cases involved an enforceable arbitration clause or entirely state law claims.  It reminds the court that Johnson's claims arise from state law, and that in *Argon Credit* the court held that "[c]ore proceedings are actions by or against the debtor … [in] that the Code itself is the source of the claimant's right or remedy[.]"  2018 WL 4562542, at *5 (quotation omitted).  Here, SAIL asserts that the claims are not.

However, in conclusion, SAIL argues that even if Johnson's claims are core, the court "must have a compelling reason … to deviate from Congress's strong preference that the arbitration agreement be enforced." Reply, p. 3. It contends that Johnson has not shown an inherent conflict between arbitration and the purpose of the Bankruptcy Code. This is so because, by itself, the core nature of a claim for relief does not create an inherent conflict between the FAA and the Code. Furthermore, Johnson's claims are procedurally but not substantively core, and therefore do not conflict with any Bankruptcy Code policy. Her claims are matters of state law and her agreement to arbitrate disputes must be enforced.

**V.      ANALYSIS**

**A. Objection to Claim and Counterclaim: The Adversary Proceeding**

As the court described in section III(C)(2), Johnson brought three claims for relief in this adversary proceeding. The first claim for relief is brought under the PLPA and the Consumer Fraud Act. Johnson alleges that SAIL violated both statutes, and she asks that the court void SAIL's Claim and the underlying loan. She also requests a refund of all sums paid on the loan, imposition of punitive damages and an award of attorney's fees and costs of litigation. Johnson's second claim for relief is brought under the Interest Act, and she asks for statutory damages as well as attorney's fees and costs of litigation. Finally, Johnson's third claim seeks relief under the Consumer Fraud Act. She alleges that SAIL made deceptive and misleading representations concerning the nature of the transaction for the purpose of inducing her to enter into that transaction. As in the first count of the Complaint, Johnson asks that the court void SAIL's Claim and the underlying loan, refund all sums paid on the loan, impose punitive damages and award attorney's fees and costs of litigation.

10

### B.  The Federal Arbitration Act and Enforcement of Arbitration Demands

Congress enacted the FAA "in 1925 in response to widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).  *See Viking River Cruises, Inc. v. Moriana*, ___ U.S. ___, 142 S. Ct. 1906, 1917 (2022).  "Before 1925, English and American common law courts routinely refused to enforce agreements to arbitrate disputes." *Epic Systems Corp. v. Lewis*, ___ U.S. ___, 138 S. Ct. 1612, 1621 (2018).

The primary substantive provision of the FAA is found in section 2:

> A written provision in any … contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4.

The Supreme Court has interpreted section 2 as containing "two clauses: An enforcement mandate, which renders agreements to arbitrate enforceable as a matter of federal law, and a saving clause, which permits invalidation of arbitration clauses on grounds applicable to any contract." *Viking River Cruises*, 142 S. Ct. at 1917 (quotation omitted).

Section 2 is a congressional declaration favoring enforcement of arbitration agreements. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  However, "[t]he federal policy is about treating arbitration contracts like all others, not about fostering arbitration." *Morgan*, 142 S. Ct. at 1713.  *See also Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989) ("There is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate.").  As the Seventh Circuit confirmed, the FAA "eliminates hostility to private dispute resolution; it does not create a preference for that process." *Gotham Holdings*, 580 F.3d at 666.

"[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors*, 473 U.S. at 626. Johnson does not dispute that she signed the Agreement and that it contains the Clause covering "any and all claims, controversies and/or disputes arising from or related in any way to this Agreement…". Response, p. 6. The next question, therefore, is whether the Clause should be enforced.

Because "[t]he preeminent concern of Congress in passing the [Federal Arbitration] Act was to enforce ***private*** agreements into which parties had entered," courts must "rigorously enforce agreements to arbitrate, even if the result is 'piecemeal' litigation[.]" *Dean Witter*, 470 U.S. at 221 (emphasis added). *See McMahon*, 482 U.S. at 226 ("The Arbitration Act, standing alone, therefore mandates enforcement of agreements to arbitrate statutory claims."); *Moses H. Cone*, 460 U.S. at 20 ("[T]he relevant federal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement.") (footnote omitted).

As is the case with any statutory directive, the FAA's "mandate may be overridden by a contrary congressional command." *McMahon*, 482 U.S. at 226.

> If Congress did intend to limit or prohibit waiver of a judicial forum for a particular claim, such an intent will be deducible from the statute's text or legislative history, or from an inherent conflict between arbitration and the statute's underlying purposes.

*Id.* at 227 (quotation omitted).

The party seeking to prevent arbitration "bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000). *See McMahon*, 482 U.S. at 227 ("The burden is on the party opposing arbitration … to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at

issue."); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) ("the burden is on Gilmer to show that Congress intended to preclude a waiver of a judicial forum").

> When confronted with two Acts of Congress allegedly touching on the same topic, this Court is not at liberty to pick and choose among congressional enactments and must instead strive to give effect to both.  A party seeking to suggest that two statutes cannot be harmonized, and that one displaces the other, bears the *heavy burden of showing a clearly expressed congressional intention* that such a result should follow.

*Epic*, 138 S. Ct. at 1624 (quotations omitted) (emphasis added).  *See, e.g., McMahon*, 482 U.S. at 238 ("there is nothing in the text of the RICO statute that even arguably evinces congressional intent to exclude civil RICO claims from the dictates of the Arbitration Act"); *Morton v. Mancari*, 417 U.S. 535, 551 (1974) (the intent of the legislature to repeal a statute must be "clear and manifest," finding that the Equal Employment Opportunity Act did not repeal a statute implementing a preference for Native Americans) (quotation omitted).

## C.  Exceptions to Enforcement: Conflict with the Bankruptcy Code

### 1.  Whether a claim is excepted from arbitration does not turn necessarily on whether it is core or non-core

There is no dispute between the parties or for this court that a valid arbitration agreement concerning arbitrable claims exists.  The question is whether any of those claims should be excepted from arbitration.

In order to determine whether Debtor has met her heavy burden of showing a clearly expressed congressional intention "to preclude a waiver of judicial remedies for the statutory rights at issue[,]" *Green Tree*, 531 U.S. at 90, the court may consider three different sources.  "That intent must be deducible from (1) the statute's text; (2) its legislative history; or (3) 'an inherent conflict between arbitration and the statute's underlying purposes.'" *Moses v. CashCall, Inc.*, 781 F.3d 63, 71 (4th Cir. 2015) (quoting *McMahon*, 482 U.S. at 227).

13

Neither the Supreme Court nor any Circuit Court of Appeals has found that the Bankruptcy Code's text or legislative history clearly express an intent to except claims from arbitration. *See, e.g., Jalbert v. Zurich Am. Ins. Co.* (*In re Payton Const. Corp.*), 399 B.R. 352, 361 (Bankr. D. Mass. 2009) ("The parties and authorities agree that neither the text nor the legislative history of the Bankruptcy Code and related statutes clearly expresses a Congressional intention to preclude (or not) a waiver of judicial remedies for the statutory rights under the Code."). The key question, therefore, is whether there is an inherent conflict between arbitration and the underlying purposes of the Code in relation to the particular dispute for which a party seeks to enforce an arbitration clause. *See McMahon*, 482 U.S. at 227.

It should be apparent that if there is an inherent conflict between arbitration and the purposes of the Bankruptcy Code, then it is not relevant whether the dispute is core or non-core. Yet courts, and in this case, the parties, have focused on this question. *See In re Anderson*, 884 F.3d 382, 387 (2d Cir. 2018) ("[T]he specific question posed in this case … whether arbitration may be compelled in this bankruptcy proceeding … requires the bankruptcy court to determine first whether the issue involves a 'core' or 'non-core' proceeding[.]"); *In re Thorpe Insulation Co.*, 671 F.3d 1011, 1020 (9th Cir. 2012) ("Several of our sister circuits that have addressed the issue have considered, as a threshold matter, a distinction between core and non-core proceedings.").

Although the parties argue the distinctions between core and non-core matters as the foundation to their respective positions on arbitrability, the answer to the question of whether a matter is core or non-core dictates whether a bankruptcy court may enter final judgment without obtaining consent, or whether it may only submit proposed findings of fact and conclusions of law to the district court. 28 U.S.C. § 157(c)(1). It should not be used as a bright line in

14

determining the enforceability of arbitration clauses.  Arbitration of both core and non-core

matters can inherently conflict with the jurisdiction of the bankruptcy court and its ability to

enforce provisions of the Bankruptcy Code.  Whether a matter is core or non-core is simply a

factor to consider when determining if there is an inherent conflict.

### 2. Whether there is an inherent conflict between the FAA and the Bankruptcy Code

#### a. Purposes of the Bankruptcy Code

As the court stated in the Introduction, Congress intended to grant comprehensive

jurisdiction to bankruptcy courts so that they might "deal efficiently and expeditiously with all

matters connected with the bankruptcy estate[.]"  *Celotex*, 514 U.S. at 308 (quotation omitted).

One of the primary "purpose[s] of the bankruptcy laws is to secure a prompt and effectual

administration and settlement of the estate … within a limited period, and that provision for

summary disposition, without regard to usual modes of trial attended by some necessary delay, is

one of the means chosen by Congress to effectuate that purpose[.]"  *Katchen*, 382 U.S. at 328-29.

It gave the bankruptcy court *in rem* jurisdiction – the power to adjudicate matters against

property of the estate.  *See Cent. Virginia Cmty. Coll.*, 546 U.S. at 362 ("Bankruptcy jurisdiction,

at its core, is *in rem*.").

By centralizing disputes regarding the debtor's assets and obligations, the Bankruptcy

Code protects "both debtors and creditors from piecemeal litigation and conflicting judgments.

Ease and centrality of administration are thus foundational characteristics of bankruptcy law."

*CashCall*, 781 F.3d at 72 (citations and quotation omitted).  Bankruptcy brings all interested

parties to one forum, and provides the court with expansive jurisdiction to adjudicate rights

among those parties relating to the debtor's property.

> The district court in which a case under title 11 is commenced or is pending shall
> have exclusive jurisdiction--

(1) of all the property, wherever located, of the debtor as of the
commencement of such case, and of property of the estate[.]

28 U.S.C. § 1334(e).

The Code is designed to facilitate the timely, cost-effective resolution of all claims.

Creditors are entitled to the filing and confirmation of a timely plan in chapter 13, *see* 11 U.S.C.

§ 1307(c)(1) ("cause" to convert or dismiss a case includes "unreasonable delay by the debtor

that is prejudicial to creditors"), and for disbursements under that plan to begin in a reasonable

time.  Creditors and interested parties – "a party in interest" – can object to claims against the

estate.  11 U.S.C. § 502(a).  Congress provided the bankruptcy court with the powers and

procedures to exercise its *in rem* jurisdiction over all parties claiming a right or interest in or

against the estate.

### b.  Bankruptcy disputes – core and non-core matters

While the designation of a matter as core or non-core is not dispositive as to whether an

arbitration clause should be enforced, it does inform the analysis required of the bankruptcy

court, which is to inquire as to whether there is an inherent conflict between the FAA and the

Bankruptcy Code.  28 U.S.C. § 157(b)(2)(B) provides that the "allowance or disallowance of

claims against the estate" are core claims.  Objections to the allowance of claims against the

estate must be grounded in one of the nine exceptions described in 11 U.S.C. § 502(b).  The first

of these exceptions provides that the court shall not allow a claim against the estate to the extent

that "such claim is unenforceable against the debtor and property of the debtor, under any

agreement or applicable law for a reason other than because such claim is contingent or

unmatured[.]"  11 U.S.C. § 502(b)(1).  Therefore, objections to claims that seek disallowance on

the grounds that the claim is unenforceable under state law are statutorily core matters.

16

The Supreme Court has distinguished, however, between statutorily core claims and constitutionally core claims. *See Stern v. Marshall*, 564 U.S. 462, 482 (2011) ("Although we conclude that § 157(b)(2)(C) permits the Bankruptcy Court to enter final judgment on Vickie's counterclaim, Article III of the Constitution does not."). The Court provided the framework for determining whether a dispute is constitutionally core. Disputed matters that "stem[] from the bankruptcy itself or would necessarily be resolved in the claims allowance process," *id.* at 499, are constitutionally core.

> To assess the latter half of the *Stern* test, courts generally look to see if a "common nucleus of law and fact" exists to inextricably intertwine the claims and counterclaims. Furthermore, for a counterclaim to be necessarily resolved in ruling on the proof of claim, the relationship must be such that resolution of the counterclaim would alter the amount sought by the claimant. Moreover, a counterclaim that seeks to reduce the amount that debtors owe to a claimant should be contrasted with the situation where a bankruptcy estate is seeking affirmative monetary relief from a claimant to augment the bankruptcy estate. In other words, a counterclaim by the estate based in state law must seek to directly reduce or recoup the amount claimed in order to be resolved in ruling on the proof of claim.

*TP, Inc. v. Bank of Am., N.A.* (*In re TP, Inc.*), 479 B.R. 373, 384-85 (Bankr. E.D.N.C. 2012) (citations and quotations omitted). *See Pulaski v. Dakota Fin., LLC* (*In re Pulaski*), 475 B.R. 681, 688 (Bankr. W.D. Wis. 2012) ("[W]hen the debtor's claim and the validity of the creditor's claim are sufficiently tied together, the bankruptcy court is authorized under *Stern* to enter a final judgment."). An objection to claim under section 502, which is a dispute that would not exist but for the Bankruptcy Code, is constitutionally core. If the objector includes a state-law counterclaim against the creditor that would necessarily be resolved in the claims allowance process, as *Stern* tells us, that would also be constitutionally core.

Therefore, counterclaims may be constitutionally core if they "seek to directly reduce or recoup the amount claimed[.]" *TP*, 479 B.R. at 385. *See Allied Title Lending, LLC v. Taylor*, 420 F. Supp. 3d 436, 449-50 (E.D. Va. 2019) (finding to be constitutionally core the claim for

17

relief in complaint that objected to creditor's claim on the grounds that it should be disallowed because the underlying credit agreement violated the state's usury statute and thus was null and void), *appeal dismissed*, 2022 WL 1563625 (4th Cir. Feb. 10, 2022); *Kiskaden v. LVNV Funding, LLC* (*In re Kiskaden*), 571 B.R. 226, 235-36 (Bankr. E.D. Ky. 2017) (finding to be constitutionally core the claim for relief in complaint that objected to creditor's claim on the grounds that it should be disallowed because the underlying loan was void under the Kentucky Consumer Loan Act). *See also Camac Fund, L.P. v. McPherson* (*In re McPherson*), 630 B.R. 160, 173-75 (Bankr. D. Md. 2021) (fraudulent transfer claim was part of the claims administration process); *In re Olde Prairie Block Owner, LLC*, 457 B.R. 692, 698-99 (Bankr. N.D. Ill. 2011) (counterclaims were core proceedings because they raised affirmative defenses to the validity of the creditor's claim and had to be resolved before creditor's claim could be allowed). *But see Kramer v. Mahia* (*In re Khan*), 2014 WL 10474969 (E.D.N.Y. Dec. 24, 2014) (action to avoid and recover proceeds of a mortgage as a fraudulent conveyance under New York Debtor and Creditor Law was a non-core matter).

The difference between core and non-core determines whether the bankruptcy court can enter a final judgment or must instead submit proposed findings of fact and conclusions of law to the district court. 28 U.S.C. § 157(c). But, the bankruptcy court has jurisdiction to hear both. Significantly, the distinction does not definitively determine whether there is an inherent conflict between arbitration and the purposes of the Bankruptcy Code.

### c. Sending some matters to arbitration may inherently conflict with the Bankruptcy Code

Is there an inherent conflict between arbitration of a claim and the purposes of the Bankruptcy Code? "Arbitration is inconsistent with centralized decision-making because permitting an arbitrator to decide a core issue would make debtor-creditor rights contingent upon

18

an arbitrator's ruling rather than the ruling of the bankruptcy judge assigned to hear the debtor's case." *Phillips v. Congelton, L.L.C.* (*In re White Mountain Mining Co., L.L.C.*), 403 F.3d 164, 169 (4th Cir. 2005) (quotation omitted).

> [The debtor] filed a Chapter 13 petition under the Bankruptcy Code and a five-year plan to reorganize her financial affairs….
>
> It is thus apparent that resolution of [debtor's] claim that the Loan Agreement she entered into … was illegal could directly impact claims against her estate and her plan for financial reorganization …. Therefore, we conclude that forcing [the debtor] to arbitrate her constitutionally core claim would inherently conflict with the purposes of the Bankruptcy Code[.]

*CashCall*, 781 F.3d at 72-3 (citations and quotation omitted).

This case presents an even clearer example of why a bankruptcy court's decision to bow out of deciding a claim objection and refer it to arbitration would conflict with the purposes of the Code. In *CashCall*, the debtor had already confirmed her chapter 13 plan. In this case, confirmation of Johnson's plan is on hold while this objection to claim is resolved. *See Thorpe Insulation*, 671 F.3d at 1023 (Writing in the chapter 11 context that "[a]rbitration of a creditor's claim against a debtor, even if conducted expeditiously, prevents the coordinated resolution of debtor-creditor rights and can delay the confirmation of a plan of reorganization.").

Furthermore, the *CashCall* panel had to hypothesize that even though her "unsecured creditors are currently anticipated to receive nothing under Moses' confirmed plan [that] does not mean that they never will." *Id.* at 73. Johnson's unsecured creditors, however, expect to be paid in full and must wait for resolution of this dispute before disbursements can begin.

As discussed above in section 2(a), the Bankruptcy Code brings together various parties in interest, centralizing disputes regarding the debtor's assets and obligations. The bankruptcy court has *in rem* jurisdiction over property of the estate and the several parties in interest making claims against it. Arbitration proceedings, meanwhile, have "bilateral arbitration as the

19

prototype of the individualized and informal form" protected by the FAA. *Viking River Cruises*, 142 S. Ct. at 1921. While there is a contract between Johnson and SAIL, with an arbitration clause, there are strangers to that clause and that contract who are parties in interest in the bankruptcy case. "The Federal Arbitration Act does not promote arbitration at the expense of strangers." *Gotham Holdings*, 580 F.3d at 666.

The Bankruptcy Code is a unique piece of legislation in that the forum in which it is implemented is not party-specific or bilateral. This is evident even in the names of bankruptcy cases. While traditional lawsuits are captioned as Plaintiff vs. Defendant, bankruptcy cases are styled as In re Debtor's Name. The Code provides a comprehensive jurisdictional structure to bankruptcy courts so that they can deal with all of the rights, interests and obligations of the varied parties who appear and seek to be heard. The right to be heard in chapter 11 cases, for example, is so expansive that it is codified at 11 U.S.C. § 1109(b): "A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter."

While a bankruptcy court's jurisdiction is not limitless, Congress equipped it with "comprehensive jurisdiction … so that [it] might deal efficiently and expeditiously with all matters connected with the bankruptcy estate[.]" *Celotex*, 514 U.S. at 308 (quotation omitted). This protects "reorganizing debtors and their creditors from piecemeal litigation … so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas." *White Mountain Mining*, 403 F.3d at 170 (quotation omitted).

In *White Mountain Mining*, the bankruptcy court found that enforcing an arbitration clause and staying an adversary proceeding would substantially interfere with the debtor's efforts

20

to reorganize. Since resolution of the issue "was critical to the debtor's ability to formulate a plan of reorganization, the court would resolve the adversary proceeding on an expedited basis." *Id.* Although *White Mountain Mining* involved a chapter 11 case and Johnson filed for relief under chapter 13, they have in common that neither reorganization could proceed until the issue at hand was resolved. Keeping that issue in bankruptcy court rather than sending it out to arbitration "would allow all creditors, owners and parties in interest to participate in a centralized proceeding at a minimum of cost." *Id.* (quotation omitted).

Although the Seventh Circuit has not yet written on this issue, other Circuit Courts of Appeal have affirmed a bankruptcy court's rejection of a request to send a disputed matter to arbitration when doing so would conflict with the purposes of the Bankruptcy Code. *See Anderson*, 884 F.3d at 387 ("If the bankruptcy court determines that arbitration would create a severe conflict with the purposes of the Bankruptcy Code, it has discretion to conclude that Congress intended to override the Arbitration Act's general policy favoring the enforcement of arbitration agreements.") (quotation omitted); *In re EPD Inv. Co., LLC*, 821 F.3d 1146, 1150 (9th Cir. 2016) ("The bankruptcy court properly applied *Thorpe Insulation* to determine that the arbitration provisions at issue conflicted with Bankruptcy Code purposes of having bankruptcy law issues decided by bankruptcy courts; of centralizing resolution of bankruptcy disputes; and of protecting parties from piecemeal litigation."); *CashCall*, 781 F.3d at 72 ("With respect to Moses' first claim, the constitutionally core claim, we conclude that sending it to arbitration would pose an inherent conflict with the Bankruptcy Code[.]"); *In re Gandy*, 299 F.3d 489, 495 (5th Cir. 2002) ("A bankruptcy court does possess discretion, however, to refuse to enforce an otherwise applicable arbitration agreement when the underlying nature of a proceeding derives exclusively from the provisions of the Bankruptcy Code and the arbitration of the proceeding

21

conflicts with the purpose of the Code."); *In re U.S. Lines, Inc.*, 197 F.3d 631, 641 (2d Cir. 1999) (finding that "need for a centralized proceeding" supported the conclusion that "[i]t was within the bankruptcy court's discretion to refuse to refer the declaratory judgment proceedings, which it properly found to be core, to arbitration"). *Cf. MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 110 (2d Cir. 2006) ("These factors distinguish Hill's case from cases where appellate courts have held that bankruptcy courts had discretion to refuse to stay proceedings pending arbitration. In those cases, resolution of the arbitrable claims directly implicated matters central to the purposes and policies of the Bankruptcy Code.").

Trial-level courts have also written about their decisions to refuse to enforce arbitration agreements when doing so would conflict with the purposes of the Bankruptcy Code.  For example, the *Acis Capital Management* court declined to enforce "an otherwise valid, binding arbitration clause" because all eight counts that the defendant sought to arbitrate had been "asserted *defensively* to two proofs of claim – meaning … transformed into statutory core matters." *Phelan v. Highland Cap. Mgmt., L.P.* (*In re Acis Cap. Mgmt., L.P.*), 600 B.R. 541, 557-58 (Bankr. N.D. Tex. 2019) (footnote omitted).  It found that "[e]nforcing the arbitration clause here would conflict with the purposes of the Bankruptcy Code[.]" *Id.* at 560.  *See Larson v. Swift Rock Fin., Inc.* (*In re Craig*), 545 B.R. 47, 54 (D. Colo. 2015) ("[T]here is an inherent conflict between arbitration of the CUDMSA claim … and the underlying purposes of the Bankruptcy Code…. In the context of this case, enforcing arbitration would substantially undermine the orderly, efficient, and effective administration of the bankruptcy estate."); *Roth v. Butler University* (*In re Roth*), 594 B.R. 672, 677 (Bankr. S.D. Ind. 2018) ("Allowing an arbitrator to determine dischargeability creates an inherent conflict with the Bankruptcy Code[.]"); *Lischwe v. ClearOne Advantage, LLC* (*In re Erwin*), No. 15-06713-5-DMW, 2018 WL 1614160, at *12

22

(Bankr. E.D.N.C. Mar. 30, 2018) ("To send both the core and non-core claims or even just to send the non-core UDTP Claim to arbitration would have a significant adverse effect upon the adjudication of these claims and upon the fundamental purposes of the Bankruptcy Code and would risk compromising the Debtor's rights under North Carolina law.").

### D. Resolution of Debtor's Objection and Counterclaim

At this time, Debtor's case is essentially on hold while awaiting a resolution of SAIL's Motion to Compel. She cannot move forward with the hearing on confirmation of the Second Amended Plan, and creditors cannot receive payment on their claims, while this issue remains unresolved. While proposing to treat all claims and address the issues of all parties in interest in the case, progress is stalled because SAIL would like to arbitrate the Claim *it filed in this case*.

#### 1. Count I

In Count I, Johnson asks this court to void SAIL's proof of claim and the underlying loan because SAIL violated both the PLPA and the Consumer Fraud Act. This is not a private right of action but instead a basis for Johnson's objection to SAIL's Claim; that it is unenforceable under state law.

SAIL argues (mistakenly attributing the *Argon Credit* decision to the undersigned) that "[t]his Court has examined claims attacking the validity of a loan agreement before and found them to be non-core claims." Motion to Compel, p. 7 (citing *Argon Credit*, 2018 WL 4562542, at *5).

This court does not need to disagree with the well-reasoned decision in *Argon Credit* to come to a different conclusion in this case, because the facts and procedural posture of the two cases are different. In *Argon Credit*, the court found "that the arbitrations at issue are neither actions by nor against the Debtor; rather, they are actions by third-parties against third-parties.

23

This fact weighs against core classification." *Id.*, at *6 (footnote omitted). Furthermore, "in no way does the matter sought to be arbitrated involve the allowance or disallowance of claims against this estate, nor would it *necessarily* be resolved in adjudicating any proof of claim currently filed against this estate." *Id.*, at *7.

This proceeding, by contrast, involves claims for relief by a debtor against a creditor who filed a proof of claim in her bankruptcy case. Therefore, it is an action by the Debtor. Furthermore, the basis of Johnson's claim for relief in Count I is that SAIL's Claim is unenforceable under state law. Resolution of that claim for relief involves the allowance or disallowance of a claim against this estate. 11 U.S.C. § 502(b). It must necessarily be resolved in adjudicating SAIL's Claim. Simply put, it is constitutionally core.

Debtor also seeks a refund of all sums paid on the loan as well as punitive damages and an award of attorney's fees and costs. This request must be resolved to determine the amount due on SAIL's Claim. *See Olde Prairie Block*, 457 B.R. at 699. Debtor's plan will not be confirmed, creditors will not receive distributions, and Debtor's discharge will not issue until the claim objection is resolved. If arbitration is permitted, there is an inherent conflict with the Bankruptcy Code. The Clause will not be enforced.

### 2. Count II

In Count II, Johnson seeks damages under the Illinois Interest Act. This is not an objection to SAIL's Claim, nor must it be resolved in order to determine the amount due on that claim. It also is non-core.

Johnson argues that this claim for relief is core because "[w]hether the loan violated the Interest Act depends on whether it violated the PLPA[.]" Response, p. 8. That may be so, but it does not make a claim under the Illinois Interest Act core. It remains unnecessary to resolve this

24

claim for relief in order to determine the amount of SAIL's Claim against the bankruptcy estate. Johnson seeks an award of damages under this count, and not a declaration that SAIL's Claim is unenforceable under state law.

Equally unavailing is Johnson's argument that "if Debtor recovers damages from SAIL, other creditors will again be paid more quickly." Response, p. 9. She provides no authority for the proposition that this type of impact on her creditors is equivalent to resolving the amount of a claim against her estate or that the recovery of damages is necessary to confirmation of the Second Amended Plan. Unlike the first claim for relief, Count II does not "seek to directly reduce or recoup the amount claimed[.]" *TP*, 479 B.R. at 385.

One could argue that the court has *in rem* jurisdiction over this claim, and that granting the Motion to Compel and requiring arbitration of the Illinois Interest Act claim might conflict with the Bankruptcy Code. In this case, however, the facts clearly justify granting the Motion to Compel as to Count II. This claim for relief arises solely under state law. Any recovery under this count would not impact Johnson's plan.

> [Debtor's] non-core claim … demands money damages for [the creditor's] alleged violations of the North Carolina Debt Collection Act. Although the success or failure of the non-core claim may have ancillary effects on [Debtor's] bankruptcy – primarily through the enlargement of the underlying estate due to any damages received – any such results are simply too attenuated, and indeed extrinsic to the bankruptcy, to constitute an "inherent conflict" with the Bankruptcy Code's purpose of facilitating an efficient reorganization.

*CashCall*, 781 F.3d at 82 (Gregory, J., concurring) (statutory citation omitted).

Moreover, this court often confirms chapter 13 plans that provide for turnover of the non-exempt proceeds of a lawsuit, typically one pending in another forum. The unusual nature of this claim as compared to run-of-the-mill personal injury litigation does not make it any less amenable to resolution by a different forum, in this situation an arbitral forum.

25

In fact, because of the unique nature of a chapter 13 case (as opposed to a chapter 11 case), the Trustee or an unsecured creditor may request modification of the plan "[a]t any time after confirmation of the plan but before the completion of payments under such plan[.]"  11 U.S.C. § 1329(a).  Such modifications include increasing or reducing the amount of payments on claims of a particular class, or altering the amount of the distribution to a creditor "to the extent necessary to take account of any payment of such claim other than under the plan[.]" 11 U.S.C. §§ 1329(a)(1), (3).  There is no explicit standard in the Bankruptcy Code for determining when a modification that falls within section 1329 should be approved.  *See Germeraad v. Powers*, 826 F.3d 962, 971 (7th Cir. 2016).  The decision on a motion to modify plan is left to the discretion of the bankruptcy judge.  *See Matter of Witkowski*, 16 F.3d 739, 746 (7th Cir. 1994).

Therefore, if it is necessary, the court can consider a motion to modify Johnson's plan after the count seeking relief under the Illinois Interest Act has been resolved through arbitration.

Some courts have held that a motion to compel arbitration of a non-core claim must be granted, even if doing so would inherently conflict with the purposes of the Bankruptcy Code. *See CashCall*, 781 F.3d at 76 (dissenting from the majority opinion and finding that sending a non-core claim to arbitration while the bankruptcy court retained jurisdiction over core claims would "inherently conflict with the purposes of the Bankruptcy Code"); *McPherson*, 630 B.R. at 177 ("[P]recedent requires more than a finding that arbitration would potentially conflict with the purposes of the Bankruptcy Code to refuse arbitration.  Rather, the conflict must be inherent and sufficient to override by implication the presumption in favor of arbitration.") (quotations omitted).  This court need not address that issue here.  Debtor's argument assumes that this claim is core.  It is not.  Whether core or non-core, however, simply informs the court in its

26

determination of conflict.  Sending to arbitration the claim under the Illinois Interest Act does not

inherently conflict with the purposes of the Bankruptcy Code.

### 3.  Count III

In Count III, Johnson alleges that SAIL violated the Consumer Fraud Act by making

deceptive and misleading representations concerning the nature of the transaction between

herself and SAIL.  She asks this court to void SAIL's Claim and the underlying loan.

Although the Consumer Fraud Act does not contain the remedy found in the PLPA that

"[a]ny loan made in violation of this Act is null and void and no person or entity shall have any

right to collect, attempt to collect, receive, or retain any principal, fee, interest, or charges related

to the loan[,]" 815 ILCS 123/15-5-10, it does provide the relief Johnson seeks.  "The court, in its

discretion may award actual economic damages *or any other relief which the court deems

proper*[.]"  815 ILCS 505/10a (emphasis added).  *See Geske v. PNY Techs., Inc.*, 503 F. Supp. 3d

687, 710 (N.D. Ill. 2020) ("The statutory text grants courts the power to award broad relief….

'Any other relief' means *any* other relief.") (citation omitted).

SAIL argues (again, mistakenly attributing the *Argon Credit* decision to the undersigned)

that "[t]his Court has examined claims attacking the validity of a loan agreement before and

found them to be non-core claims."  Motion to Compel, p. 7 (citing *Argon Credit*, 2018 WL

4562542, at *5).

As discussed above in section D(1), this court does not need to disagree with *Argon

Credit* to come to a different conclusion here.  The facts and procedural posture of the two cases

are different.  In *Argon Credit*, the arbitrations were actions by third parties against third parties.

Furthermore, the matter sought to be arbitrated in *Argon Credit* did not involve the allowance or

disallowance of claims against this estate, nor would it necessarily be resolved in adjudicating a proof of claim.

Therefore, the analysis for Count III is much the same as it was for Count I. This proceeding involves claims by a debtor against a creditor who filed a proof of claim in her bankruptcy case. Therefore, it is an action by the Debtor. Furthermore, the basis of Johnson's claim for relief is that SAIL's Claim is unenforceable under state law. Resolution of that claim for relief involves the allowance or disallowance of a claim against this estate. 11 U.S.C. § 502(b). It must necessarily be resolved in adjudicating SAIL's Claim. It is constitutionally core.

Debtor also seeks a refund of all sums paid on the loan as well as punitive damages and an award of attorney's fees and costs. This request must be resolved to determine the amount due on SAIL's Claim. *See Olde Prairie Block*, 457 B.R. at 699. Debtor's plan will not be confirmed, creditors will not receive distributions, and the debtor's discharge will not issue until the claim objection is resolved. If arbitration is permitted, there is an inherent conflict with the Bankruptcy Code. The Clause will not be enforced.

This court can resolve the Debtor's objection to SAIL's Claim (Counts I and III) and address confirmation of Johnson's plan. Count II can then proceed to arbitration. Once the arbitration proceeding is concluded, Johnson (or the Trustee, or an unsecured creditor) can bring a motion to modify her plan to provide that any non-exempt proceeds from prosecuting the Illinois Interest Act claim is an additional plan payment and will be distributed to creditors.

## VI.   CONCLUSION

For the reasons stated above, the court will enter an order denying the Motion to Compel as to Counts I and III. The court will grant the Motion to Compel as to Count II but stay arbitration until resolution of the objection to SAIL's Claim. Status on the Complaint as well as

28

the hearings on confirmation of Johnson's plan, her counsel's application for compensation and

the Trustee's motion to dismiss will be continued to a new date as set forth in the order

accompanying this opinion.


Date:   March 28, 2023

_____
DAVID D. CLEARY
United States Bankruptcy Judge